UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FIODALISA VARGAS DICUPE,

               Plaintiff,

    -vs-                             **No. 1:16-CV-00903 (MAT)**
                                       **DECISION AND ORDER**
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

---

## I. Introduction

Proceeding *pro se*, plaintiff Fiodalisa Vargas Dicupe ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court is the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

Plaintiff protectively filed an application for SSI on August 30, 2012, alleging disability as of that date due to depression, migraines, inability to sleep, fibromyalgia, and high blood pressure. Administrative Transcript ("T.") 107. Plaintiff's

application was initially denied. T. 117-22. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") William M. Weir on April 14, 2014, at which Plaintiff appeared with a representative. T. 74-105. On April 21, 2015, the ALJ issued an unfavorable decision. T. 47-73. On October 13, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision. T. 1-7. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 30, 2012, the date of her application. T. 55.

At step two, the ALJ found that Plaintiff suffered from the severe impairments of schizoaffective disorder, myalgia, and bilateral hearing loss. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 57. The ALJ particularly considered Listings 1.02 (major dysfunction of a joint), 2.10 (hearing loss not treated with cochlear implantation), 12.03 (schizophrenia spectrum and other psychotic disorders), 14.02 (systemic lupus erythematosus), and

14.09 (inflammatory arthritis) in reaching this conclusion. T.57-59.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional nonexertional limitations: can have no more than 85 dB of sound in the work environment, can have no more than one task at a time, can have no more than occasional contact with coworkers, supervisors, or the public, and cannot do work that requires the ability to communicate in the English language. T. 59.

At step four, the ALJ found that Plaintiff had no past relevant work. T. 66. At step five, the ALJ relied on the testimony and written submissions of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeper, inspector, and bench assembler. T.66-67. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 68.

IV. Discussion

A. Standard of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

In this case, the Commissioner contends that her final decision was well-supported by substantial evidence and free from legal error. Having reviewed the record, and for the reasons discussed below, the Court agrees.

**B. The ALJ's Decision was Supported by Substantial Evidence and Free from Legal Error**

The Court has considered the findings made by the ALJ at each step of the five-step sequential evaluation to ascertain whether the were supported by substantial evidence and based on appropriate

4

legal principles. For the reasons discussed below, the Court finds that the ALJ's decision must be affirmed.

   **1.  Step One Findings**

At step one, the ALJ made a finding favorable to Plaintiff (namely, that she had not engaged in substantial gainful activity since her application date). Accordingly, the Court finds no basis for reversal or remand at step one.

   **2.  Step Two Findings**

At step two, the ALJ was required to determine whether Plaintiff suffered from a severe impairment or combination of impairments. For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.9249(c).

In this case, the ALJ conclude that Plaintiff's schizoaffective disorder, myalgia, and bilateral hearing loss were severe impairments. This conclusion is consistent with the medical evidence of record and the Court finds no error in it.

The ALJ also concluded at step two that Plaintiff did not suffer from the medically determinable impairment of fibromyalgia. The ALJ explained that although Plaintiff's primary care physician had diagnosed her with unspecified myalgia and myositis, he had not indicated that Plaintiff suffered from fibromyalgia. The ALJ further explained that although a consultative examiner had noted that Plaintiff suffered from fibromyalgia, that conclusion was

5

based on Plaintiff's self-report that she had been diagnosed with fibromyalgia seven years earlier, and not on the consultative examiner's own findings. Moreover, the ALJ noted that the consultative examiner had stated that Plaintiff did not put forth full effort during her physical examination. The ALJ explained that the medical record therefore did not support the conclusion that Plaintiff suffered from fibromyalgia.

The ALJ appropriately analyzed the evidence of record regarding fibromyalgia. Social Security Ruling ("SSR") 12-2p provides guidance regarding an ALJ's consideration of whether a claimant has the medically determinable impairment of fibromyalgia. SSR 12-2p specifically indicates that, in order for a claimant to show that he or she suffers from fibromyalgia, the medical evidence of record must show certain specific criteria have been met, including a diagnosis from a physician based on his or her own assessment of the claimant. Those criteria were not met in this case, and the ALJ therefore properly found that Plaintiff did not have the medically determinable impairment of fibromyalgia.

The record also amply supports the ALJ's conclusion that Plaintiff did not have a medically determinable impairment of migraines. As the ALJ noted, no physician had diagnosed Plaintiff with migraines, and the medical record contains no treatment for headaches or migraines. T. 56. A medically determinable impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (internal quotation omitted). Plaintiff's reported migraines did not meet this standard.

The ALJ also correctly determined that Plaintiff's hypertension and asthma were not severe impairments. Plaintiff's hypertension and asthma are well-controlled, and there is no evidence that they cause any more than a minimal impact of Plaintiff's ability to perform basic work-related activities, rendering them non-severe.

For the foregoing reasons, the Court finds that the ALJ correctly analyzed Plaintiff's claimed impairments at step two. There is no basis for remand at this stage of the ALJ's decision.

### 3. Step Three Findings

Turning to the ALJ's step three analysis, the Court notes that the ALJ considered whether Plaintiff's impairments met or equaled a number of listings, including Listings 1.02, 2.10, 12.03, 14.02, and 14.09. The ALJ's analysis of these listings was appropriate, and the Court finds no error in the ALJ's conclusion that Plaintiff's impairments did not meet or equal their requirements.

### 4. RFC Finding

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional nonexertional limitations: can have no more than 85 dB of sound in the work environment, can have no more than one task at

a time, can have no more than occasional contact with coworkers, supervisors, or the public, and cannot do work that requires the ability to communicate in the English language. T. 59. This finding was well-supported by the evidence of record.

Consultative examiner Dr. Donna Miller examined Plaintiff on December 17, 2012. T. 364-67. Dr. Miller noted at the outset that Plaintiff did not appear to be putting forth her full effort into the physical examination. T. 365. Nevertheless, Plaintiff walked with a normal gait, maintained a normal stance, used no assistive devices, and needed no help getting onto or off of the examination table. *Id*. Plaintiff had a reduced range of motion of the cervical and lumbar spine, but Dr. Miller again noted that she did not appear to be putting forth a full effort. T. 366. Plaintiff's neurological examination was unremarkable. *Id*. Dr. Miller opined that plaintiff had only a "mild limitation for heavy lifting, bending, and carrying" (T. 367), which is fully consistent with the ALJ's conclusion that Plaintiff can engage in light work.

Turning to Plaintiff's mental impairments, psychiatric consultative examiner Dr. Renee Baskin examined Plaintiff on December 27, 2012. T. 360-63. Dr. Baskin's examination of Plaintiff was largely normal - Plaintiff was responsive and cooperative, exhibited normal posture, motor behavior, and eye contact, had fluent and clear speech, had adequate receptive language skills (though she was not proficient in English), and had coherent and goal-directed thought processes. T. 361. Dr. Baskin, who is

bilngual in English and Spanish, conducted the examination in Spanish. *Id*.

Plaintiff's sensorium was clear, she was fully oriented, and her attention, concentration, and memory skills were mildly impaired. T. 361-62. Plaintiff's intellectual functioning was estimated as being in the low average range, but her general fund of information was appropriate to her experience. T. 361. Dr. Baskin opined that Plaintiff would have minimal-to-no limitations in being able to follow and understand simple directions and instructions, and perform simple tasks independently, and would have moderate limitations in being able to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. T. 362.

State agency psychological consultant Dr. Juan Echevarria reviewed the evidence of record on January 23, 2013, and opined that Plaintiff had moderate difficulties maintaining social functioning, concentration, persistence, and pace. T. 110-11. Dr. Echevarria indicated that Plaintiff would be able to handle brief and superficial contact with coworkers and the public, as well as ordinary levels of supervision in the customary work setting. T. 111.

The ALJ's RFC finding accounts for the mental limitations identified by Drs. Baskin and Echeevarria. The ALJ limited

9

Plaintiff to only occasional contact with coworkers, the public, and supervision, in accordance with her documented difficulties in social functioning. The ALJ further indicated that Plaintiff could not perform more than one task at a time (accounting for her limitations in concentration, persistence, and pace, as well as for her difficulty in learning new tasks), and that Plaintiff could not required to communicate in the English language (further accommodating Plaintiff's social difficulties and difficulties with stressful situations).

The ALJ also properly assigned little weight to an opinion submitted by Plaintiff's mental health counselor. A mental health counselor is considered an "other source" under the Commissioner's regulations, and the ALJ "has the discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995). In this case, the opinion in question was inconsistent with another opinion issued by the sane mental health counselor only five days later, in which the mental health counselor admitted that she was "unable to report" on Plaintiff's ability to work, and acknowledged it was Plaintiff who reported that she was "not able to work due to mental health [and] medical conditions." *See* T. 513, 543-45. These internal inconsistencies adequately support the ALJ's assessment of this other source opinion. Moreover, the ALJ noted that the mental health counselor's opinion was inconsistent with her own treatment notes.

T. 66. An ALJ is not required to give significant weight to an other source's opinion where it is inconsistent with the relevant treatment notes. *See Bulavinetz v. Astrue*, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009).

The ALJ also properly determined that Plaintiff's subjective complaints were less than fully credible. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). As noted above, in this case, the record showed that Plaintiff failed to put in a full effort when being physically examined by Dr. Miller. Moreover, although Plaintiff's primary care physician recommended on several occasions that she see a rheumatologist, Plaintiff failed to do so. *See* T. 64. The ALJ additionally noted that Plaintiff's testimony at the hearing was inconsistent with her medical records. For example, Plaintiff testified that she could not exercise, but the record shows that her treating physician encouraged her to exercise. *See* T. 65. The ALJ further noted that Plaintiff's work history, which showed no reportable earnings in at least 20 years, did not "paint a picture of an individual who is well motivated to work within her capabilities." *Id*. The ALJ's credibility

11

determination is well-supported by the record, and relied on appropriate considerations.

For all the foregoing reasons, the Court therefore finds no error, legal or otherwise, in the ALJ's assessment of Plaintiff's RFC. The Court therefore finds no basis for reversal or remand in this portion of the ALJ's findings.

### 5. Step Four Findings

At step four, the ALJ found that Plaintiff had no past relevant work. This finding is fully supported by the record and the Court finds no error in it.

### 6. Step Five Findings

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and accordingly found that Plaintiff was not disabled as defined in the Act. T. 68. The ALJ's conclusion was supported by substantial evidence. VE Timothy Janikowski provided a written submission indicating that an individual with Plaintiff's RFC could perform jobs that exist in the national economy, including the representative professions of housekeeper, bench assembler, and inspector. T. 343. This information from the VE is sufficient to support the ALJ's conclusion that there exists potential "substantial gainful employment suited to [Plaintiff's] physical and vocational capabilities." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In sum, and having reviewed the record in full, the Court finds that the ALJ's decision applied the appropriate legal standard and is based on substantial evidence. As such, there is no basis for this Court to remand the matter to the Commissioner or to reverse the Commissioner's final determination.

## V. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket No. 11) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: July 6, 2018
Rochester, New York.